UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DANIEL DAWES, et al.,

                    Plaintiffs,

          v.

MOTEL 6 OPERATING L.P., et al.,

                    Defendants.

NO. CV-04-3120-EFS

**ORDER RULING ON THE
PARTIES' RESPECTIVE MOTIONS
FOR SUMMARY JUDGMENT,
RULING ON CWI'S MOTION *IN
LIMINE*, AND AMENDING THE
AMENDED SCHEDULING ORDER**

On November 22, 2005, the Court heard oral argument on Plaintiffs
Daniel Dawes' and Dalise Olin-Pinon's Motion to Supplement Plaintiffs'
Statement of Facts in Opposition to Defendants' Motions for Summary
Judgment ("Motion to Supplement") (Ct. Rec. 112), Plaintiffs' Motion for
Summary Judgment (Ct. Rec. 83), Defendant CWI Security, Inc.'s ("CWI's")
Motion for Summary Judgment (Ct. Rec. 37), and Defendant Motel 6
Operating L.P.'s ("Motel 6's") Motion for Summary Judgment (Ct. Rec. 78).
Ms. Chellie M. Hammack appeared on behalf of Plaintiffs, while CWI and
Motel 6 were respectively represented by Mr. Richard S. Lowell and Mr.
John C. Moore.  During that hearing, the Court issued several rulings
from the bench on the parties' separate motions.  This Order serves to
memorialize and supplement those earlier rulings and those rendered by
the Court during the parties' January 31, 2006, pretrial conference on
CWI's Motion *in Limine* (Ct. Rec. 121).

ORDER ~ 1

# I. Background

Plaintiffs are an interracial couple. Mr. Daniel Dawes is Caucasian and Ms. Dalise Olin-Pinon is African-American. Mr. Dawes, accompanied by Ms. Olin-Pinon, traveled to Yakima, Washington on July 5, 2005, to complete a drywall project for a family friend. Mr. Carl Hoffman, also Caucasian, Mr. Dawes' friend and co-worker traveled to Yakima as well. The three made arrangements to stay at the Motel 6 in Yakima for three nights, arriving on Friday, July 5, 2002, and departing Monday, July 8, 2002. Upon registration, Mr. Dawes was given room 118, in which he and Ms. Olin-Pinon would stay. Motel 6 claims Mr. Dawes registered the room exclusively in his name, paid only for a single occupancy, and it was unaware Ms. Olin-Pinon was staying in the room. Plaintiffs dispute this assertion, claiming Ms. Olin-Pinon participated in the registration process and that her credit card was used to pay for Plaintiffs' stay. Mr. Hoffman paid and registered for his own stay and was given room 119, which was next to Plaintiffs' room. Also staying at the hotel that weekend were Mr. Anthony Benvenuti and Mr. Rick Somonski, two of Plaintiffs' friends.

A "low-rider" vehicle convention was being held in Yakima the same weekend Plaintiffs reserved their room at the Motel 6. Defendants claim "low-rider weekend," an annual event in Yakima, is historically known to be "fairly 'wild'" and that "the local police 'have their hands full' with fights, drinking and a general riotous atmosphere." Whether such an atmosphere was experienced during the July 5-7, 2002, weekend is disputed by the parties. To prepare for low-rider weekend, Motel 6,

ORDER ~ 2

1  which usually has only one CWI security guard on site, requested an
2  additional CWI security guard.

3      Plaintiffs' first night at the motel has been described as
4  uneventful.  On Saturday, Mr. Dawes and Mr. Hoffman departed the motel
5  for their work site, where they spent most of their day.  Later in the
6  afternoon, Mr. Dawes and Mr. Hoffman returned to the motel to shower and
7  change their clothes.  Thereafter, Plaintiffs and Mr. Hoffman left the
8  motel for dinner.  The three eventually returned to the motel sometime
9  between 10:00 p.m. and 11:00 p.m.  Plaintiffs returned in one vehicle and
10 Mr. Hoffman in another.  When Plaintiffs pulled into the motel's parking
11 lot, they were stopped by a CWI security guard who asked them to display
12 their room key so the guard could confirm Plaintiffs were motel guests.
13 Mr. Hoffman was also stopped and asked to display his room key.
14 Plaintiffs claim an elderly Caucasian couple pulled into the parking lot
15 just before Plaintiffs had pulled in and were not forced to stop and
16 display their room key.

17     While walking back to their room, Plaintiffs claim to have heard
18 screaming.  They eventually determined the screaming was occurring in
19 front of a room located near their room.  According to Plaintiffs, the
20 motel manager (Christian Connor), two CWI security guards, and two guests
21 were screaming at each other.  Once Plaintiffs arrived outside their
22 room, they, and Mr. Hoffman were instructed by a CWI security guard that
23 they must go into their rooms.

24     Plaintiffs claim the elderly Caucasian couple were not instructed
25 to remain in their room.  Despite this assertion, Defendants claim they
26 asked all guests to remain in their rooms due to low-rider weekend

ORDER ~ 3

disturbances occurring at the motel earlier in the evening, including loud noise, flying bottles, and fights. Mr. Conner, an unserved and unlocated Defendant in this case, had the two on-duty CWI security guards, Thomas Roblee and Casey Kisser, ask guests to remain in their rooms and not allow non-guests into the parking lot. Mr. Roblee and Mr. Kisser were apparently the two officers Plaintiffs and Mr. Hoffman encountered when arriving back at the motel after their late dinner. However, over the course of the night, several other CWI security guards were called to the motel to provide assistance.

After being in their room for several minutes, Plaintiffs left the room to obtain ice for sodas they had purchased earlier in the day. While walking toward the ice machine, Plaintiffs passed by a CWI security guard, Mr. Connor, and their friends, Mr. Benvenuti and Mr. Somonski, who were involved in an dispute. When Mr. Connor saw Plaintiffs walking in his direction, he told them to return to their rooms and that if they refused, he would call the police, have them arrested, and evict them from their room. As a result, Plaintiffs returned to their room before they were able to reach the ice machine.

Later in the evening, while Mr. Dawes and Mr. Hoffman were outside their respective rooms talking with each other, Mr. Roblee approached the men and asked them to go back into their rooms. When Mr. Dawes asked Mr. Roblee why he and Mr. Hoffman had to remain in their rooms, Mr. Roblee allegedly stated:

> [D]on't kill the messenger, but the manager said they've had complaints of too many ethnic minorities in the parking lot, and we've been asked to keep people in their rooms because it's disturbing other guests.

ORDER ~ 4

(Ct. Rec. 77-3 at 7.)  At that point, Mr. Dawes and Mr. Hoffman returned to their rooms and remained there for the remainder of the evening.  Ms. Olin-Pinon alleges to have heard this comment as well.  Defendants deny this comment was ever made.  Moreover, Plaintiffs both claim to have believed they would have been arrested if they ventured out of their room.  During the afternoon of the following day, Plaintiffs requested a refund of the fees they paid for their room.  This request was denied and Plaintiffs ultimately decided to stay at the motel for their final night.

Plaintiffs claim to have suffered emotional distress as a result of this incident.  In July 2004, this action was filed against Defendants alleging the following causes of action: (1) false imprisonment, (2) breach of contract, (3) discrimination in public accommodation in violation of R.C.W. § 49.60.030, (4) discrimination in public accommodation in violation of 42 U.S.C. § 2000a, (5) denial of equal rights to make and enforce contracts in violation of 42 U.S.C. § 1981, (6) Consumer Protection Act violations, (7) negligent training, and (8) negligent supervision.  CWI and Motel 6 now move the Court for summary judgment on each of Plaintiffs' claims.  While Plaintiffs seek summary judgment on their false imprisonment, Consumer Protection Act, and negligent training claims.

## II. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c).  When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id*. at 248.  In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id*.  There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248.  This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

ORDER ~ 6

### III. Plaintiffs' Motion to Supplement Statement of Facts

On the day preceding the hearing on parties' dispositive motions, Plaintiffs moved the Court for leave to supplement their statements of material fact in opposition to Defendants' motions for summary judgment. (Ct. Rec. 112.) Specifically, Plaintiffs hoped to supplement the record with a the Declaration of Elizabeth Wright, who had been a guest at the Yakima Motel 6 during the 2004 low-rider weekend. In her declaration, Ms. Wright, an African-American, claims to have been treated by Defendants in similar ways as Plaintiffs allege to have been treated in this case. (Ct. Rec. 112 at 6.) Over Defendants' objection, the Court granted Plaintiffs' Motion to Supplement for the reasons stated on the record.

### IV. Defendants' Motions for Summary Judgment[1]

Defendants CWI and Motel 6 individually move the Court for summary judgment on all claims asserted in Plaintiffs' Complaint. The Court grants in part, denies in part, and denies as moot in part Defendants' motions and rules on each request as follows:

//

---

[1] In its Motion for Summary Judgment, Motel 6 adopts the recitation of facts and argument set forth in Defendant CWI's Motion for Summary Judgment and submits several supplemental facts and arguments in support of its various positions. For this reason and because Plaintiffs' claims against CWI and Motel 6 are nearly identical, the Court will consider both Defendants' motions in this section, noting differences when necessary.

ORDER ~ 7

1    **A. False Imprisonment Claims**

2        "In an action for false imprisonment, the plaintiff must prove that

3    the liberty of his or her person was restrained." *Moore v. Pay'N Save*

4    *Corp.*, 20 Wash. App. 482, 486 (1978).

5            A person is restrained or imprisoned when he is deprived of
             either liberty of movement or freedom to remain in the place
6            of his lawful choice; and such restraint or imprisonment may
             be accomplished by physical force alone, or by threat of force,
7            or by conduct reasonably implying that force will be used.

8    *Kilcup v. McManus*, 64 Wash. 2d 771, 777 (1964).  Additionally, "if the

9    words and conduct are such as to induce a reasonable apprehension of

10   force and the means of coercion are at hand, a person may be as

11   effectually restrained and deprived of liberty. . . ." *Id.* at 778.

12       **1. *Moore v. Pay'N Save***

13       In *Moore v. Pay'N Save*, 20 Wash. App. 482 (1978), the Washington

14   State Court of Appeals reversed the trial court's grant of summary

15   judgment in favor of the defendant on the plaintiff's false imprisonment

16   claim.  In that case, the plaintiff, who had been waiting in line for

17   several minutes to purchase a can of hair spray, unexpectedly decided to

18   leave the store. *Id.* at 161.  However, before leaving, the plaintiff left

19   the can of hair spray on a store counter. *Id.*  Several seconds later,

20   while walking back to her car, the plaintiff was tapped on the shoulder

21   by a women who flashed a badge at the plaintiff. *Id.* at 162.  The woman

22   with the badge questioned the plaintiff about the can of hair spray,

23   implying she believed the plaintiff had taken it from the store without

24   paying. *Id.*  During this exchange, the badged woman fliped the

25   plaintiff's jacket open to see if the can of hair spray was concealed

26   inside the jacket. *Id.*  The plaintiff then explained that she had left

the hair spray inside the store. *Id.* Then, upon request, the plaintiff returned to the store to show the woman with the badge where the can of hair spray had been left. *Id.*

The Court in *Pay'N Save* embraced the notion of "borderline" false imprisonment cases, in which plaintiffs have acquiesced to defendants' requests to restrain their freedom. *Id.* at 487. In such cases, a determination of whether the plaintiff's acquiescence was voluntary is vital to a determination of false imprisonment liability. On one hand, it the plaintiff freely choose to "surrender [his] freedom of motion, as by remaining in a room or accompanying the defendant voluntarily, to clear himself of suspicion or to accommodate the desires of another, rather than yielding to the constraint of a threat, then there is no imprisonment." *Id.* However, on the other hand, false imprisonment liability may be found if the plaintiff did not freely acquiesce to the defendant's request for assistance, but instead, did so out of reasonable fear the defendant would force her to comply if she declined to assist, *i.e.* she would be forcibly required to return to the store if she refused the security guard's "request" to return.

The Court of Appeals believed *Pay'N Save* was a borderline case and decided a jury was required to determine whether the plaintiff "reasonably believed her liberty was restrained" by the woman with the badge. *Id.* at 487-88. Before arriving at its conclusion, the court stated its belief the "security officer was acting under apparent authority, *i.e.*, claiming to have the authority and power of a police officer" and that although the officer "subsequently 'requested' [the plaintiff] accompany her back into the store, the 'request' was

implicitly coercive." *Id.*   Thus, the court believed an open question remained as to whether the plaintiff had voluntarily returned to the store or only did so out of reasonable fear the woman with the badge would have forced her to return to the store if she refused.

### 2. Analysis

In considering Defendants' motions for summary judgment on Plaintiffs' false imprisonment claims, the Court notes it is undisputed that Plaintiffs' liberty of movement and freedom to remain in the common areas of the motel were restricted on the night in question.   Thus, the Court's inquiry focuses of whether such restrictions were the result of Defendants' conduct or based on voluntary choices made by Plaintiffs.

Plaintiffs claim they returned to and remained in their room out of fear they would be arrested and/or evicted from the motel.   Meanwhile, Defendants assert that Plaintiffs were merely asked to remain in their rooms and did so voluntarily.   This dispute highlights the "borderline" nature of this case, in which a jury will be required to determine whether Plaintiffs' acquiescence to Defendants' "requests" were voluntary or the result of reasonable apprehension force would have been used to make them stay in their rooms, as was the case in *Pay'N Save*.   Thus, the Court denies Defendants' requests for summary judgment on Plaintiffs' false imprisonment claims.   In so ruling, the Court notes that even though no physical force was used to confine Plaintiffs to their room, the threat of having the police summoned to arrest Plaintiffs compels the need for this issue to be heard by a jury to determine whether Plaintiffs reasonably feared force would have been used if they did not comply with Defendants' requests.

ORDER ~ 10

**B. Outrage Claims**

"Intentional infliction of emotional distress" and "outrage" are synonyms for the same tort. *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash. 2d 233, 250 (2001).  The basic elements of an outrage claim are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. State*, 113 Wash. 2d 612, 630 (1989) (quoting *Rice v. Janovich*, 109 Wash. 2d 48, 61, 742 P.2d 1230 (1987)).  "The conduct in question must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975)).  "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* (citing *Phillips v. Hardwick*, 29 Wash. App. 382, 387, 628 P.2d 506 (1981)).

In their Complaint, Plaintiffs allege Defendants' conduct on the night of July 6, 2002, "was extreme and outrageous, intentional and/or reckless . . . and actually caused plaintiffs severe emotional distress." (Ct. Rec. 77-8 at 21.)  Defendants now move for summary judgment on Plaintiffs' outrage claims arguing Plaintiffs cannot establish Defendants' conduct was sufficiently outrageous in character or extreme in degree to prove the claims.  Plaintiffs counter Defendants' arguments by pointing to what they believe was the allegedly outrageous behavior of (1) requiring minority guests and their associates to remain in their

ORDER ~ 11

rooms and (2) the aggressive physical mistreatment of other guests, which included physically throwing Mr. Somonski out of his room and Mr. Conner's "chest butting" of other guests.

To begin, the Court finds no significance in Plaintiffs' allegations of aggressive physical mistreatment of guests not parties to this action with regard to their outrage claims.  No evidence has been presented Plaintiffs were physically mistreated, witnessed the alleged aggressive conduct, or that knowledge of the alleged mistreatment has caused Plaintiffs any distress.  Moreover, the Court does not find Plaintiffs' outrage claims, which do not involve the use or threatened use of violence, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Accord Humble v. Boeing Co.*, 305 F.3d 1004, 1014 (9th Cir. 2002)(finding no reason to define failure to reasonably accommodate as inherently outrageous).  Therefore, Plaintiffs have not met their summary judgment burdens under *Celotex*, 477 U.S. at 322-23. Additionally, because the outrage claims are premised on Defendants' alleged discriminatory misconduct, they are duplicative of Plaintiffs' discrimination claims and prohibited by law. *See Anaya v. Graham*, 89 Wash. App. 588, 595-96 (1998).  Accordingly, summary judgment is granted in Defendants' favor on Plaintiffs' outrage claims.

///

///

///

///

///

**C. Common Law Breach of Contract Claim**[2]

In their Complaint, Plaintiffs assert a common law "Breach of Contract" claim in which they allege "Motel 6 contracted with plaintiffs to provide them with lodging and services" and that Motel 6's conduct "was a breach of the implied contractual duty of good faith and fair dealing." (Ct. Rec. 77-8 at 21.)   Motel 6 only briefly addresses Plaintiffs' common law contract claim in its motion, stating that the claim must fail because Plaintiffs were "never denied a room or asked to leave the motel" after checking in. (Ct. Rec. 78 at 4.)   Motel 6 also implies that Ms. Olin-Pinon had no contractual relationship with Motel 6 because the room used by Plaintiffs was allegedly only rented to Mr. Dawes for single occupancy use.

Motel 6's brief and conclusory arguments fail because disputed issues of material fact exist as to whether Plaintiffs received the full benefit of the room rental agreement, *i.e.* denied the right to access common areas and make use of the ice machine, and whether Ms. Olin-Pinon was a party to the rental agreement, *i.e.* whether Ms. Olin-Pinon participated in the registration process and was a known occupant of the room.   For these reasons, Motel 6 is not entitled to summary judgment on Plaintiffs' common law contract claim and its motion is denied to this extent.

---

[2] Plaintiffs have stated they "are not pursuing a claim of . . . breach of contract against defendant CWI." (Ct. Rec. 75 at 1.)   Thus, CWI's motion is denied as moot to the extent it seeks summary judgment on Plaintiffs' breach of contract claim.

ORDER ~ 13

**D. Discrimination Claims**

Defendants seek summary judgment on each of Plaintiffs' federal and state claims of discrimination.  The parties' arguments and respective Court rulings on each request are discussed below.

**1. Mr. Dawes' Right to Bring Discrimination Claims**

Defendants move the Court for summary judgment on all discrimination-based claims alleged by Mr. Dawes because he is Causcasian and not a member of a protected class.  In opposition, Mr. Dawes argues that discrimination claims may be brought by persons who are discriminated against due to their association with members of a protected class.

The Court concurs with Mr. Dawes' position on this issue with regard to his § 1981 and § 2000a claims and denies Defendants' requests for summary judgment to this extent. *See Adickes v S. H. Kress & Co.*, 398 U.S. 144, 150 n.5 (1970)(noting "[i]t is clear" and seemingly conceded by the defendant, that the defendant's refusal to serve the plaintiff, a white woman who, in the company of six black friends, had entered the defendant's store to eat at the store's lunch counter, was a violation of § 2000a); *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144 (4th Cir. 1980) (white student who was dismissed from school due to her association with a black student was permitted to file suit under § 1981); *Alizadeh v Safeway Stores, Inc.*, 802 F.2d 111 (5th Cir. 1986) (white woman could bring § 1981 action against store that terminated her employment based on her husband's national origin); *Offner v. Shell's City, Inc.*, 376 F.2d 574 (5th Cir. 1967); *Tolg v. Grimes*, 355 F.2d 92 (5th Cir. 1966); *Valle v. Stengel,* 176 F.2d 697 (3rd Cir. 1949).

However, because R.C.W. § 49.60.030 only protects members of protected classes from discrimination, the Court grants summary judgment on Mr. Dawes' § 49.60.030 claim in favor of Defendants. *See Demelash v. Ross Stores, Inc.*, 105 Wash. App. 508, 525 (2001)(To establish a prima facie case of discrimination under § 49.60.030, a plaintiff must establish he is a member of a protected class.); *accord Sedlacek v. Hillis*, 145 Wash. 2d 379, 392 (2001) (noting in a disability discrimination case that "the Legislature has not extended [R.C.W. § 49.60.030] to include a prohibition against association discrimination").

**2. Federal Public Accommodation Claim: 42 U.S.C. § 2000a**

Under 42 U.S.C. § 2000a(a), all persons are "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, or national origin." Motels are places of public accommodation under § 2000a. 42 U.S.C. § 2000a(b)(1).

Therefore, to prove their § 2000a discrimination claims, Plaintiffs must be capable of presenting sufficient evidence to establish (1) Defendants affect commerce, (2) the motel in question is a public accommodation, and (3) Defendants denied plaintiff full and equal enjoyment of the motel, free from discrimination or segregation on the ground of race, color, or national origin. 42 U.S.C. § 2000a; *see United States v. DeRosier*, 473 F.2d 749 (5th Cir. 1973); *Wooten v. Moore*, 400 F.2d, 239, 241 (4th Cir. 1968); *Jeffrey v. Home Depot U.S.A., Inc.*, 90 F.Supp.2d 1066, 1070 (S.D. Cal. 2000). Because the first two elements

ORDER ~ 15

1   are undisputed, the Court's inquiry is restricted to considering whether
2   material facts concerning the third element are in dispute.

3       Defendants believe they are entitled to summary judgment on
4   Plaintiffs' § 2000a claims because Plaintiffs allegedly cannot
5   demonstrate they were denied full and equal use of the motel or that any
6   restricted use of the motel facilities were racially motivated.[3]    In
7   support of this position, Defendants repeatedly emphasize that all
8   guests, on the weekend in question, were treated equally, *i.e.* all guests
9   were asked to display their motel key prior to entering the motel's
10  parking lot and to remain in their rooms.

11      In opposition to Defendants' requests for summary judgment on the
12  § 2000a claims, Plaintiffs point to evidence they believe proves all
13  guests *were not* treated equally and that the unequal treatment was
14  racially motivated.  This evidence includes: (1) Plaintiffs' statements

15  _____

16      [3] Defendants also argue Plaintiffs' § 2000a claims must fail because
17  the statute does not allow for damages. (Ct. Rec. 86 at 13.)  Although
18  Defendants are correct to note Plaintiffs may not recover damages based
19  on their § 2000a claims, *see Newman v. Piggie Park Enterps., Inc.*, 390
20  U.S. 400, 402 (1968), they are incorrect to assert Plaintiffs § 2000a
21  claims must be dismissed for lack of prospective relief.  By Defendants'
22  own admissions, § 2000a claims allow for declaratory relief and the
23  recovery of attorney's fees. (Ct. Rec. 86 at 12); *Newman*, 390 U.S. at
24  402.  Thus, should the jury find Plaintiffs have proved their § 2000a
25  claims, relief could be found in a declaratory judgment and the award of
26  attorney's fees and Defendants' motions are denied to this extent.

ORDER ~ 16

they saw an elderly Caucasian couple drive into the motel parking lot and not be stopped nor asked to display a motel key prior to being granted entrance, as Plaintiffs claim they were required to do; (2) Plaintiffs' statements that the same elderly Caucasian couple was not stopped and told to go to their room after parking their car, as Plaintiffs' claim they were told to do; (3) Defendants' alleged mistreatment of Mr. Benvenuti, who according to Plaintiffs appears to be Hispanic, and Mr. Somonski, who was staying at the motel with his Native American girlfriend; (4) Mr. Roblee's alleged statement that Plaintiffs were being confined to their room due to guest complaints there had been too many minorities in the parking lot; and (5) Ms. Wright's account of her 2004 stay at the same motel, in which she claims she and her husband were harassed by a motel security guard while standing outside their room, when Caucasian guests, who were doing the same thing, were not harassed.[4]

The evidence cited by Plaintiffs is intended to defeat Defendants' requests for summary judgment on the § 2000a claims in two ways. First,

---

[4] In her declaration, Ms. Wright also states she learned a friend's parents, also African-Americans, were told, during the same weekend, they could not sit outside and had to return to their room. (Ct. Rec. 112 at 7.) Because this statement is hearsay and not admissible at trial, it may not be used to defeat Defendants' motions for summary judgment. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.").

ORDER ~ 17

by serving as direct proof of discrimination, *i.e.* Defendants unequal treatment of Plaintiffs and the elderly Caucasian couple and racially-motivation for the unequal treatment (guest complaints regarding minorities in the parking lot. Second, by highlighting the existence of a pattern and practice of discrimination employed by Defendants against similarly situated individuals.

Defendants argue Ms. Wright's statements are inadmissible to prove they discriminated against Plaintiffs because the conduct complained of by Ms. Wright occurred two years after the Plaintiffs were allegedly discriminated against and for this reason are irrelevant to Plaintiffs' claims. Plaintiffs counter by directing the Court to the First Circuit's opinion in *Brown v. Trustees of Boston University*, where similar evidence was deemed admissible to prove gender-based employment discrimination. 891 F.2d 337 (1st Cir. 1990).

The plaintiff in *Brown* was suing a university in connection with its denial of her tenure application. *Brown*, 891 F.2d at 349. The First Circuit affirmed the district court's decision to admit evidence of specific comments, which were denigrating to women, made by the university's president two years after the plaintiff's tenure application was denied. *Id.* Those comments were made by the university president in connection with a different woman's tenure application, which was ultimately approved. *Id.* The First Circuit likened the university president's comments to evidence of *prior* discriminatory conduct, which is usually permitted to demonstrate motive or intent under Federal Rule of Evidence 404(b) in other discrimination cases. *Id.* Although the First Circuit believed the president's comments were not necessarily indicative

of whether the university discriminated against the plaintiffs, the court
believed the comments "reflected a patronizing attitude toward women -
an attitude that might possibly have affected [the university's] earlier
decision in [the plaintiff's] case." *Id.* at 349-50.  Thus, because the
court believed the comments were relevant and not substantially
outweighed by the danger of unfair prejudice, the evidence was deemed
admissible. *Id.* at 350.

Despite the former ruling, the First Circuit did not affirm the
district court's decision to admit separate statements made by the
university's president during a speech made three years after the
plaintiff's tenure application was denied. *Id.*  These statements related
to the president's belief that the increase in mothers entering the work
force was causing societal harm. *Id.*  The court concluded this evidence
was inadmissible because it was not "closely related" to the
discriminatory conduct complained of by the plaintiff. *Id.*

In this instance, consistent with the *Brown* opinion, the only
relevant authority cited by the parties on this issue, the Court finds
Ms. Wright's testimony is admissible under Rule 404(b) as evidence of
Defendants' motive and intent and that the evidence is not barred by Rule
403.  Ms. Wright's testimony is closely related to the complaints made
by Plaintiffs, in that all allege to have been harassed by Defendants for
race-based reasons and were not permitted to enjoy their room rentals to
the same degree Caucasian guests were permitted to enjoy their room
rentals.

Based on the evidence relating to Ms. Wright and Plaintiffs' direct
observations of the elderly Caucasian couple's treatment by Defendants,

1   the Court finds issues of material fact exist as to whether Plaintiffs
2   were denied equal enjoyment of the motel facilities and whether the
3   unequal enjoyment was racially motivated.    Accordingly, Defendants
4   motions for summary judgment on Plaintiffs' § 2000a claims are denied.
5   **3. State Public Accommodation Claim: R.C.W. § 49.60.030(1)(b)**
6       In Washington State the "right to be free from discrimination
7   because of race . . . is recognized as and [has been] declared to be a
8   civil right." R.C.W. § 49.60.030(1).   The right to be free from racial
9   discrimination encompasses the "right to the full enjoyment of any of the
10  accommodations, advantages, facilities, or privileges or any place of
11  public . . . accommodation." *Id.* § 49.60.030(1)(b).   Persons who believe
12  their rights under R.C.W. § 49.60.030(1) have been violated are entitled
13  to seek an enjoinment of further violations and recover actual damages.
14  *Id.* § 49.60.030(2).   To successfully prove her § 49.60.030 claims, Ms.
15  Olin-Pinon must establish: (1) she is a member of a protected class; (2)
16  the Yakima Motel 6 is a place of public accommodation; (3) Defendants
17  discriminated against Ms. Olin-Pinon by not treating her in a manner
18  comparable to the treatment is provides to persons outside her protected
19  class; and (4) Ms. Olin-Pinon's protected class status was a substantial
20  factor causing the discrimination. *See Demelash*, 105 Wash. App. at 524.
21      In their instant motions, Defendants argue they are entitled to
22  summary judgment on Ms. Olin-Pinon's § 49.60.030 claims because she is
23  unable to demonstrate she was treated differently than any motel guests
24  or that any unequal treatment was racially motivated.   Due to the strong
25  similarities between § 49.60.030 and § 2000a, the parties' arguments on
26  this issue are almost identical to those made concerning the § 2000a

ORDER ~ 20

claims.  Accordingly, for the same reasons explained above with regard to Plaintiffs' § 2000a claims, the Court denies Defendants' motions as they relate to Ms. Olin-Pinon's § 49.60.030 claims.  Issues of material fact exist as to whether Ms. Olin-Pinon was denied equal enjoyment of the motel facilities for racially-motivated reasons.

### 4. Right to Make and Enforce Contracts Claim: 42 U.S.C. § 1981

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  Under § 1981, "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).  These rights are "protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c).[5]

Defendants assert Plaintiffs' § 1981 claims fail because no existing facts establish Plaintiffs were deprived of the right to make and enforce contracts. Additionally, Defendants argue Ms. Olin-Pinon's § 1981 claims also fail because, as they allege, she never entered or attempted to enter a contract with Defendants.  Plaintiffs oppose Defendants' motions by referring the Court to Ms. Olin-Pinon's payment for the motel room, Ms. Olin-Pinon's alleged participation in the registration process, and Plaintiffs' alleged inability to enjoy the benefits of their rental

---

[5] Thus, despite CWI's argument to the contrary, it is subject to § 1981 liability if it is found to have violated Plaintiffs' rights to make and enforce contracts.

ORDER ~ 21

agreement to the same degree Caucasian guests were permitted to, *i.e.* having to display identification when entering the motel's parking lot and being compelled to remain in their room, unlike the elderly Caucasian couple.

First, for the same reasons explained with regard to Ms. Olin-Pinon's common law contract claims, the Court finds issues of material fact exist regarding whether Ms. Olin-Pinon was a party to the rental agreement. Thus, Defendants' motions are denied on this point. Second, consistent with the Court's rulings regarding the § 2000a and § 49.60.030 claims, the Court denies the remainder of Defendants' motion as they relate to the § 1981 claims because issues of material fact exist as to whether Plaintiffs were disproportionally denied privileges associated with the rental agreement as compared to Caucasian guests.

**H. Negligent Supervision/Training Claims**

In their Complaint, Plaintiffs allege Defendants "had a duty to properly train and/or supervise their employees, both defendants failed to properly train and/or supervise their employees, as a direct and proximate result, plaintiffs were injured and suffered damages." (Ct. Rec. 77-8 at 22.) Since asserting these allegations, Plaintiffs have clarified they are not pursuing a claim of negligent supervision against CWI. (Ct. Rec. 75 at 1.) Accordingly, the Court denies as moot CWI's request for summary judgment on the claim of negligent supervision and addresses the remaining negligence-based claims below.

///

**1. Negligent Supervision Claim Against Motel 6**

ORDER ~ 22

In Washington, the "theory of negligent supervision creates a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment." *Niece v. Elmview Group Home*, 131 Wash. 2d 39, 51 (1997). Generally, an employer

> is under a duty to exercise reasonable care so [as] to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant . . . is upon the premises in possession of the master . . . and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control.

*Id.* (citing *Peck v. Siau*, 65 Wash. App. 285, 294 (1992) (quoting Restatement (Second) of Torts § 317 (1965))).

Thus, to recover under a theory of negligent supervision, a plaintiff must establish (1) he was intentionally harmed by an employee of the employer-defendant he is suing; (2) the employee was on the employer-defendant's premises when he harmed the plaintiff; (3) the employer-defendant knew or had reason to know he had the ability to control the employee; (4) the employer-defendant knew or should have known of the need and opportunity for exercising such control over the employee; and (5) the employer-defendant did not exercise reasonable care in controlling the conduct that led to the plaintiff's injury. "Washington cases have generally interpreted the knowledge element to require a showing of knowledge of the dangerous tendencies of the particular employee." *Niece*, 131 Wash. 2d at 52; *accord Thompson v. Everett Clinic*, 71 Wash. App. 548, 555 (1993), *review denied*, 123 Wash. 2d 1027 (1994) ("[A]n employer is not liable for negligently supervising

an employee . . . unless the employer knew, or in the exercise of
reasonable care should have known, the employee presented a risk of
danger to others.")

Plaintiffs' negligent supervision claim is premised on their belief
Motel 6 knew or should have known Mr. Conner presented a risk of physical
harm to guests.  In support of this belief, Plaintiffs refer the Court
to the following deposition testimony provided by Mr. Roblee, a CWI
security guard present and working at the Yakima Motel 6 on the night in
question:

> Q: And on more than one occasion, is it fair to say that motel
> management has asked you to tell guests to go back to their
> rooms or tell guests that they have to remain in their rooms?
>
> A: The three or four years I was there, yes, ma'am.  Usually
> sometime by the end of the night, yes.

(Ct. Rec. 77-5 at 6.)  Based on Mr. Roblee's statements, Plaintiff argues
Motel 6 knew or should have known Mr. Connor would ask CWI security
guards to "forcibly confine" guests during the 2002 low-rider weekend and
negligently failed to control such conduct.

Although Mr. Roblee's statement supports a finding Motel 6 knew or
should have known *previous* Yakima Motel 6 managers used CWI security
guards to asks guests to remain in their rooms, it does not support
Plaintiffs' claim Motel 6 negligently supervised Mr. Conner.  To prove
the negligent supervision claim, Plaintiffs must establish Motel 6 knew
or should have known Mr. Conner had dangerous tendencies.  Mr. Roblee's
statement does not help Plaintiffs prove this element for two reasons.

ORDER ~ 24

1   First, the statement only speaks in general terms about prior "motel

2   management" conduct and is not specific to Mr. Conner.[6]

3       Second, nothing about Mr. Roblee's statement implies there was a

4   threat of danger.  Although a guest may find it unpleasant or disturbing

5   to be asked to remain in his or her room, such a request does not present

6   a risk that the guest may be injured as a result.  Accordingly, because

7   Plaintiffs has failed to come forth with any evidence to demonstrate they

8   are capable of establishing Motel 6 knew or should have known of any

9   dangerous tendencies on the part of Mr. Conner, the Court grants summary

10  judgment on Plaintiffs' claim of negligent supervision in favor of Motel

11  6.

12              **2. Negligent Training Claims**

13      Plaintiffs claim Motel 6 and CWI negligently trained employees

14  involved in the events occurring during the weekend in question.  Both

15  claims are addressed below.

16          **a. Negligent Training Claim Against Motel 6**

17      In opposition to Defendants' motion for summary judgment, Plaintiffs

18  offered no evidence of deficient training by Motel 6.  Such evidence

19  could have been presented in a multitude of ways, including the

20  presentation of expert opinion on industry standards or by pointing to

21  inadequate Motel 6 training materials or procedures.  Because no evidence

22  was presented to demonstrate Motel 6 was negligent in training its

23  employees, the Court grants summary judgment on these claims in favor of

24  _____

25      [6] In fact, Mr. Roblee's statement is ambiguous as to whether Mr.

26  Conner is included in the class of prior "motel management" he had worked

    with.

ORDER ~ 25

1  Motel 6. *See Anderson*, 477 U.S. at 248 (The party opposing summary

2  judgment "must set forth specific facts showing that there is a genuine

3  issue for trial" to avoid summary judgment.).

4  **b. Negligent Training Claim Against CWI**

5  "The elements of a negligence cause of action are the existence of

6  a duty to the plaintiff, breach of the duty, and injury to the plaintiff

7  proximately cause by the breach." *Hertog v. City of Seattle*, 138 Wash.

8  2d 265, 275 (1999). Thus, as is the case with all negligence-based

9  claims, to prove a defendant is liable for negligent training, a

10  plaintiff must prove (1) the defendant owed the plaintiff a duty to

11  properly train its employees, (2) the defendant breached that duty, *i.e.*

12  did not exercise reasonable care in its training, and (3) the plaintiff's

13  injury was proximately caused by the defendant's failure to properly

14  train its employees.

15  Here, Plaintiffs claim Mr. Roblee was negligently trained by CWI

16  because his preassignment security guard training was allegedly not

17  conducted by a certified trainer, which is a violation of W.A.C. § 308-

18  18-300. CWI disputes this assertion, claiming Mr. Roblee's preassignment

19  training was conducted by a certified trainer in compliance with state

20  regulations. Though this issue remains in dispute, the Court nonetheless

21  grants summary judgment to CWI on Plaintiffs' negligent training claims.

22  Even if CWI did not comply with W.A.C. § 308-18-300's technical

23  training requirements and an uncertified trainer did provide Mr. Roblee's

24  preassignment training, nothing in the record establishes how such a

25  regulatory violation was a proximate cause the injuries alleged by

26  Plaintiffs. Specifically, Plaintiffs have failed to present evidence of

how the use of an uncertified trainer resulted in Mr. Roblee acting the way he allegedly did on the night in question.  For this reason, because no evidence has been offered to show a material issue of fact exists with regard to causation, the Court grants summary judgment in CWI's favor on Plaintiffs' negligent training claims.

**I. Consumer Protection Act Claims**

To prove a Consumer Protection Act ("CPA") claim, a plaintiff must establish a defendant (1) engaged in an unfair or deceptive act or practice (2) in trade or commerce (3) that impacts the public interest and (4) resulted in injury to the plaintiff's business or property. R.C.W. § 19.86.020; *Indus. Indem. Co. Of the Nw., Inc, v. Kallevig*, 114 Wash. 2d 907, 920-21 (1990).  Defendants argue they are entitled to summary judgment on Plaintiffs' CPA claims on three grounds. First, Plaintiffs had no contractual relationship with CWI to base their CPA claims against CWI on.  Second, Plaintiffs have not alleged an injury to their "business or property" as a result of a CPA violation.` Third, Defendants did not engage in any "unfair or deceptive acts or practices." There arguments are addressed in turn below.

**1. No Contractual Relationship Between Plaintiffs and CWI**

CWI argues it is entitled to summary judgment on Plaintiffs' CPA claims because no contractual relationship existed between Plaintiffs and CWI.  In support of this position, CWI relies on the Washington State Court of Appeals decision in *International Ultimate, Inc. v. St. Paul Fire & Marine Insurance Co.*, in which the court held there must be a contractual relationship between the parties if liability under the CPA is to be found. 122 Wash. App. 736, 758 (2004).  The court in

*International Ultimate* had been asked to determine whether an insurance company employee could be found personally liable under the CPA for *per se* unfair acts she had committed in her capacity as an employee of the insurance company. *Id.*  The court ultimately decided, because "the contractual relationship was between [the plaintiff] and its insurance providers[,]" the employee could not be held personally liable. *Id.*

Here, Plaintiffs allege CWI was acting as an agent of Motel 6 during the weekend in question and cannot be held liable for CPA violations that stem from the alleged violations of R.C.W. § 49.60.030.  Plaintiffs attempt to limit the holding of *International Ultimate* to situations involving insurance companies and their employees, rather than any situation involving a principal and agent.  The Court believes Plaintiffs' argument incorrectly limits *International Ultimate's* scope. The court in *International Ultimate* used broad language to announce a rule and then applied the facts of the case to that rule when stating the court's holding. *Id.*  Under *International Ultimate*, a threshold issue in all CPA cases is whether there is a contractual relationship between the plaintiff and the defendant being sued under the CPA. *Id.*  Because no evidence suggests any contractual agreement existed between Plaintiffs and CWI, the Court grants summary judgment to CWI on all CPA claims alleged by Plaintiffs.

## 2. Injury to Business or Property and the CPA Claims

"'[M]ental distress, embarrassment, and inconvenience,' without more are not compensable under the Consumer Protection Act." *Keyes v. Bollinger*, 31 Wash. App. 286, 296 (1982); *White River Estates v. Hiltbruner*, 134 Wash. 2d 761, 765 (1998).  In their Complaint, Plaintiffs

ORDER ~ 28

1  only seek damages to compensate the "emotional distress, humiliation, and
2  pain and suffering" they have allegedly suffered (Ct. Rec. 77-8 at 23),
3  which are noncompensable injuries under the CPA.  To remedy their failure
4  to allege an injury to their property, Plaintiffs request leave under
5  Federal Rule of Civil Procedure 15(b) to amend their Complaint to include
6  the pecuniary damages associated with their breach of contract and CPA
7  claims.  In support of this request, Plaintiffs indicate these damages
8  were inadvertently omitted from the Complaint, but were included in their
9  initial discovery disclosures and that no prejudice will be experienced
10 by Defendants if such amendment is permitted.

11     Under Rule 15(b), "[w]hen issues not raised by the pleadings are
12 tried by express or implied consent of the parties, they shall be treated
13 in all respects as if they had been raised in the pleadings."  The
14 instant issue - whether Plaintiffs' CPA claims should be dismissed for
15 failure to allege injury to their business or property - which was raised
16 by Defendants in their motions for summary judgment, has not yet been
17 tried, nor expressly or impliedly consented to.  Accordingly, Plaintiffs'
18 request for leave to supplement their Complaint under Rule 15(b) is
19 denied.  However, the Court finds leave to supplement under Rule 15(a)
20 is appropriate and grants Plaintiffs permission to file an amended
21 complaint that includes the damages connected to their common law
22 contract and CPA claims that were disclosed in their initial Federal Rule
23 of Civil Procedure 26 disclosures.[7]  Plaintiffs' amended complaint must

24

25     [7] Under Rule 15(a), after the time has expired for a party to amend
26 their pleading as a matter of course, they are permitted to amend "only
   by leave of court or by written consent of the adverse party; and leave

ORDER ~ 29

be filed no later than February 24, 2006.  Failure to file an amended complaint, as outlined in this section, by February 24, 2006, will result in the Court granting summary judgment to Motel 6 on Plaintiffs' CPA claims for failure to allege an injury to their property.

### 3. Unfair or Deceptive Acts and/or Practices

Motel 6 also argues it should be granted summary judgment on Plaintiffs' CPA claims because Plaintiffs cannot establish Motel 6 engaged in an unfair or deceptive act or practice as required by the statute.  Plaintiffs respond by pointing to Motel 6's alleged misconduct of discrimination and false imprisonment, which Plaintiffs argue are unfair or deceptive acts or practices under the CPA.

Because the Court has denied Defendants' requests for summary judgment on Plaintiffs' false imprisonment and discrimination claims, the Court also denies the instant request.  If the jury finds Motel 6 falsely imprisoned or discriminated against Plaintiffs, it will have a sound basis for finding Motel 6 engaged in an unfair act under the CPA.

---

shall be freely given when justice so requires."  In this instance, the Court finds justice requires the opportunity for Plaintiffs to amend their Complaint.  To rule otherwise would hold the initial pleading system unnecessarily rigid and formalistic, something contrary to the plain and simple notice pleading requirements prescribed by Federal Rule of Civil Procedure 8(a).  Additionally, the Court finds Motel 6 will not be unduly prejudiced by this decision because the damages in question were disclosed by Plaintiffs as part of their initial Rule 26 disclosures in the early stages of this case.

ORDER ~ 30

### V. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on their false imprisonment and CPA claims against both defendants and negligent training claim against CWI. As explained above, issues of material fact exist as to whether Plaintiffs were falsely imprisoned and whether Defendants violated the Consumer Protection Act. Furthermore, the Court has already granted summary judgment in CWI's favor on Plaintiffs' negligent training claims. Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment in its entirety.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Expedite Hearing on Motion to Supplement **(Ct. Rec. 110)** is **GRANTED.**

2. Plaintiff's Motion to Supplement Plaintiffs' Statement of Material Facts in Opposition to Defendants' Motions for Summary Judgment **(Ct. Rec. 112)** is **GRANTED.**

3. Defendant CWI's Motion for Summary Judgment **(Ct. Rec. 37)** is **GRANTED IN PART** (outrage, Mr. Dawes' R.C.W. § 49.60.030, negligent training, and Consumer Protection Act claims), **DENIED IN PART** (false imprisonment, § 2000a, § 1981, and Ms. Olin-Pinon's § 49.60.30 claims), and **DENIED AS MOOT IN PART** (common law contract and negligent supervision claims).

4. Defendant Motel 6's Motion for Summary Judgment **(Ct. Rec. 78)** is **GRANTED IN PART** (outrage, Mr. Dawes' R.C.W. § 49.60.030, negligent supervision, and negligent training claims) and **DENIED IN PART** (false imprisonment, common law contract, § 2000a, § 1981, Ms. Olin-Pinon's § 49.60.30, and Consumer Protection Act claims).

ORDER ~ 31

5.   Plaintiffs' Motion for Summary Judgment **(Ct. Rec. 83)** is **DENIED.**

6.   Plaintiffs are granted **leave to file an amended complaint** that alleges the injuries and damages associated with their common law contract and Consumer Protection Act claims.  Plaintiffs' amended complaint must be filed and served **no later than February 24, 2006.** Failure to file an amend complaint by February 24, 2006, will result in summary judgment on Plaintiffs CPA claims in favor of Motel 6.

7.   CWI's Motion *in Limine* **(Ct. Rec. 121)** is **GRANTED IN PART** (Nos. 1, 3, 4 (Ms. Wright's 2004 contact report and statements regarding Ms. Wright's friend's parents complaints), 5, 6, and 7)and **DENIED IN PART** (Nos. 2 and 4 (Ms. Wright's complaints)) for the reasons stated on the record and supplemented by this Order.

8.  The Amended Scheduling Order (Ct. Rec. 97) is **AMENDED** in the following ways:

a.   A JOINT PROPOSED PRETRIAL ORDER prepared in accordance with Local Rule 16.1(b) shall be filed **on or before February 13, 2006.** Counsel is instructed to e-mail the Pretrial Order, in WordPerfect or text only format, to "Sheaorders@waed.uscourts.gov".

b.   The list of exhibits contained in the Joint Proposed Pretrial Order shall reflect the exhibit marking scheme described above. In preparing the Joint Proposed Pretrial Order, the parties shall confer regarding duplicative exhibits and determine which party will submit such exhibits for trial.   Counsel shall prepare and file a list of all exhibits which will be admitted without objection no later than February 13, 2006.

ORDER ~ 32

c.   In accordance with Local Rule 83.1(g), each party shall bring to trial and any other hearing on the merits, photocopies of their relevant pre-marked exhibits for the Court, opposing counsel, and testifying witness, unless it is not possible to do so because of the nature of an exhibit.   Photocopies for these different individuals are to be organized into separate binders by exhibit number.

d.   Trial briefs, requested voir dire, and joint proposed jury instructions shall be filed and served **on or before February 21, 2006.**

The parties' joint proposed jury instructions shall be presented in the following format: (1) "Table of Contents" shall list the proposed instructions by number, brief title/subject-matter, and authority, *i.e.* Ninth Circuit Model Instruction No. ___, statute citation, or case citation; (2) "Section I: Preliminary Instructions" shall include the language of all instructions the parties would like the Court to provide prior to opening statements, including a "statement of the case" and "undisputed facts" instructions.   One instruction per page if possible, with citation to the authority for the instruction; (3) "Section II: Final Instructions" shall include the language for all instructions the parties would like the Court to provide prior to closing arguments.   One instruction per page if possible, with citation to the authority for the instruction; and (4) "Section III: Verdict Form" shall include a proposed verdict form.

The Final Instructions section shall, at a minimum, include instructions regarding the elements of each claim or defense, the relief sought, and otherwise comply with Local Rule 51.1(c).   If the parties are unable to agree on certain instructions, they are to submit individually

1  proposed jury instructions no later than the date the joint proposed

2  instructions are due.    All individually submitted proposed jury

3  instructions must adhere to the format described above for joint proposed

4  instructions and not include instructions the parties are in agreement

5  on.

6        Counsel are instructed to email courtesy copies of their joint and

7  individually proposed jury instructions, in WordPerfect or text only

8  format, to "Sheaorders@waed.uscourts.gov".

9        Any objections to the opposing party's individually submitted

10 proposed instructions must be filed no later than 5 days, excluding

11 federal holidays and weekends, after the individual proposed instructions

12 were filed.    All objections shall set forth the basis for the objection

13 and briefly explain why the instruction in question should not be used

14 or should be altered.

15        e.    Any time-sensitive materials should be faxed to Chambers

16 at 509-372-3051.

17        f.    The estimated five-day jury trial shall commence at **9:00**

18 **a.m.** on **March 20, 2006,** in **YAKIMA**, Washington.    **Counsel shall meet with**

19 **the Court in Chambers at 8:30 a.m. on the day of trial.**

20        **IT IS SO ORDERED.**    The District Court Executive is directed to enter

21 this Order and provide a copy to counsel.

22        **DATED** this ___31st___ day of January, 2006.

23

24               S/ Edward F. Shea

25               EDWARD F. SHEA
                 United States District Judge

26

Q:\Civil\2004\3120.cross.MSJs.wpd

ORDER ~ 34